IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| YANEIRA GAYA OLMEDA, | |
| Plaintiff, | |
| v. | CIVIL NO.: 14-1520 (MEL) |
| COMMISSIONER OF SOCIAL SECURITY | |
| Defendant. | |

**OPINION AND ORDER**

I. **PROCEDURAL AND FACTUAL BACKGROUND**

Yaneira Gaya Olmeda ("plaintiff" or "claimant") was born on July 22, 1976, and has a high school education. (Tr. 301, 331.) Prior to her initial application for Social Security disability benefits, plaintiff worked as an operator and inspector at a uniform factory. (Tr. 79.) Plaintiff filed an application for Social Security disability insurance benefits ("DIB"), alleging disability on the basis of severe major depressive disorder, low back pain, muscle spasm, lumbar strain, cervical strain, bilateral shoulder pain, bilateral ankle pain, thoracic subluxation, decreased lordosis, adjustment disorder with mixed anxiety and depressed mood.[1] (Tr. 301, 330.) The alleged onset of her disability was April 27, 2009, and claimant was insured until December 31, 2014. (Tr. 19, 301.) Claimant's application was denied initially and again upon reconsideration. (Tr. 63; 69.) A hearing before an Administrative Law Judge ("ALJ") was held. (Tr. 34.) Claimant waived the right to appear and testify at the hearing but was represented by counsel; a vocational expert ("VE") testified by telephone. (Tr. 17.) The ALJ rendered a decision on November 12, 2012, finding, at step five of the sequential evaluation process, that plaintiff was not disabled from alleged onset through the date of decision. (Tr. 29.) The Appeals Council denied plaintiff's request for review, at which point the

---

[1] Claimant also alleged disability on the basis of high blood pressure and hypothyroidism, but does not object to the ALJ's findings regarding these conditions.

ALJ's opinion became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). (Tr. 1.)

Plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706, alleging that defendant's finding that she was not disabled was not based on substantial evidence. (ECF No. 1, ¶¶ 2, 6.) Defendant answered and filed a certified transcript of the administrative record. (ECF No. 10, 11.) Both parties have filed supporting memoranda of law. (ECF Nos. 16, 18.)

## II.   ANALYSIS

### A. Fibromyalgia and Physical Health Findings

Claimant first argues that the ALJ failed to appropriately consider claimant's diagnosis of fibromyalgia. Although claimant did not originally claim DIB on the basis of fibromyalgia, claimant's counsel brought the diagnosis to the attention of the ALJ at the hearing. The record shows claimant was not diagnosed with fibromyalgia before filing for DIB. Rather, the first medical report expressing a finding of fibromyalgia was entered into the record on October 9, 2012. (See tr. 26.) According to claimant's counsel, "when this claimant begins treatment with Dr. Toro, who is a rheumatologist, he is the one who finally can adequately diagnose, adequately treat, the claimant for her pains." (Tr. 37.) "'Fibromyalgia is a condition which causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances' and 'unlike other medical conditions, . . . is not amenable to objective diagnosis and standard clinical tests are not highly relevant in diagnosing or assessing fibromyalgia or its severity.'" Small v. Astrue, 840 F. Supp. 2d 458, 464-65 (D. Mass. 2012) (quoting Lawson v. Astrue, 695 F. Supp. 2d 729, 744 (S.D. Ohio 2010) (internal quotations and alterations omitted)).

a. *Medical History*

Dr. Orlando Llavona González ("Dr. Llavona") treated claimant monthly beginning before the onset of disability until January 18, 2011. (Tr. 391.) Claimant was experiencing moderate severe

pain, every other day. (Tr. 391.) She was being treated with physical therapy and NSAIDs, among other things. (Tr. 391.) He listed claimant's prognosis as guarded and diagnosed her with cervical strain, lumbar strain, bilateral shoulder tendinitis, bilateral ankle strain, and scoliosis. (Tr. 391.)

Claimant's first exam at the State Insurance Fund Corp. ("SIF") coincided with the alleged onset of disability. (Tr. 127.) Treatment notes reveal claimant described not sleeping well and feeling severe pain in her neck, shoulders, ankles, and upper, mid, and low back. (Tr. 133, 145, 148, 155, 170.) She indicated that the pain occurs seventy-eight to one hundred percent of the day. (Tr. 145.) Nothing makes the back pain better, but medicine helps with the neck pain. (Tr. 145.) Claimant was diagnosed with cervical dorsal strain, lumbar strain, cervical segmental dysfunction, spasm of muscle, decreased lordosis, lumbar segmental dysfunction, thoracic subluxation, and ankle edema.[2] (Tr. 145, 148, 168.)

Claimant was examined by consultant Dr. Fernando Torres Santiago ("Dr. Torres") with complaints of cervico dorsal discomfort. (Tr. 396.) Based on imaging tests, Dr. Torres's relevant diagnostic impressions were mild CX myositis; lumbar mild anterolateral marginal osteophytes, levoscoliosis, and lumbarization of S1; and bilateral plantar calcaneal spurs (by history). (Tr. 399.)

Approximately five months after this evaluation, claimant began treatment with rheumatologist Dr. Ramón A. Toro Torres ("Dr. Toro"). Claimant saw Dr. Toro every two to three months for approximately a year. (Tr. 205.) Claimant reported moderately severe pain bilaterally in her lumbosacral spine, cervical spine, thoracic spine, chest, shoulders, arms, hands, fingers, hips, legs, knees, ankles, and feet. (Tr. 205.) Her additional symptoms included nonrestorative sleep, chronic fatigue, frequent and severe headaches, and hypothyroidism. (Tr. 205.) Dr. Toro diagnosed claimant with fibromyalgia. (Tr. 205.)

---

[2] These diagnoses were based, at least in part, upon an x-ray that revealed heel spurs and a radiology report that found minimal deviation of the spine, definite roto scoliotic deviation, small anterolateral osteophytic formations at some levels, and a plantar calcaneal spur on the right. (Tr. 150–60, 162.)

3

b. *Findings at Step Two*

Claims for DIB are evaluated under a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003). At step-two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); Tonev v. Sullivan, 977 F.2d 566 (1st Cir. 1992) (table decision). At the second step, the ALJ found "[t]he claimant has the following severe impairments: disorders of the spine, hypothyroidism, obesity, fibromyalgia and depression." (Tr. 19.) According to the ALJ, these "are severe because they cause more than minimal functional limitations in the claimant's ability to perform basic work related activities." (Id.) Plaintiff argues that by including fibromyalgia amongst the severe impairment findings, the ALJ accepted claimant's diagnoses of fibromyalgia. Defendant asserts that at this step, "the regulations require the ALJ to consider the claimant's individual impairments holistically and determine whether their combined effect is a severe impairment." ECF No. 18, at 14. Therefore, according to defendant, "it was not inconsistent for the ALJ to find that although Plaintiff's fibromyalgia was a component of her severe impairment, fibromyalgia (in and of itself) did not result in any significant limitations."[3] ECF No. 18, at 16. While step two clearly allows for a combination of multiple impairments to cross the severity threshold when the impairments standing alone would not, the ALJ made no expression in this regard. It is possible that it was this holistic view that yielded the severe impairment finding; however, the more natural reading is that the ALJ found each impairment constitutes a severe impairment in its own right. Furthermore, the ALJ never stated that the fibromyalgia was not a medically determinable impairment from which claimant suffered. It is therefore necessary to determine whether the ALJ adequately considered the effects of claimant's fibromyalgia in examining claimant's limitations.

---

[3] It should be noted that defendant never overtly argues that claimant's fibromyalgia was not a medically determinable impairment. Rather, the commissioner's argument appears limited to contesting the functional limitations that flow from the diagnosis and Dr. Toro's report.

c. *Claimant's Limitations*

"[O]nce the ALJ accepted the diagnosis of fibromyalgia, she also '*had no choice* but to conclude that the claimant suffer[ed] from the symptoms usually associated with [such condition], unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms.'" Johnson v. Astrue, 597 F.3d 409, 414 (1st Cir. 2009) (emphasis and alterations in original) (quoting Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994)). The ALJ, however, is not automatically required to find claimant disabled. See, e.g., Medina-Augusto v. Comm'r of Soc. Sec., No. CV 14-1431 (BJM), 2016 WL 782013, at *8 (D.P.R. Feb. 29, 2016) (holding even in the case of fibromyalgia "[t]he ALJ is required to consider all of the evidence of record when weighing . . . subjective claims of pain, to resolve conflicts in the evidence, and draw reasonable conclusions from the record"); Barowsky v. Colvin, No. 15-CV-30019-KAR, 2016 WL 634067, at *4 (D. Mass. Feb. 17, 2016) ("it does not follow from a diagnosis of fibromyalgia that a claimant is necessarily disabled.); Downs v. Comm'r, Soc. Sec. Admin., No. 2:13-CV-02-DBH, 2014 WL 220697, at *4–5 (D. Me. Jan. 21, 2014) ("Johnson does not stand for the proposition that an administrative law judge who finds a severe impairment of fibromyalgia must accept a claimant's allegations regarding the extent of his or her limitations at face value."). Therefore, in reaching the residual functional capacity ("RFC") finding,[4] the ALJ must either incorporate the symptoms usually associated with fibromyalgia or identify contrary substantial evidence.

Although the ALJ does not mention fibromyalgia in any later stages of the opinion, claimant's subjective complaints of pain and the findings of Dr. Toro are discussed in the portion of the opinion devoted to determining claimant's RFC. There the ALJ found as follows:

> claimant has the residual functional capacity to perform light work requiring lifting or carrying 20 pounds, occasionally and 10 pounds frequently, sitting 6 hours in an 8 hour workday, standing or walking 6 hours in an 8 hour workday with no limitations for pushing or pulling, and performing unskilled work that is simple and repetitive that requires occasional contact with coworkers and the public.

---

[4] An individual's RFC is the most that he can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

(Tr. 23.) This is consistent with the findings that non-examining consultant Dr. Cindy Ramírez Pagán ("Dr. Ramírez") assessed in reliance on an examination by internist Dr. Torres.

Based on the fibromyalgia diagnosis, claimant's treating rheumatologist Dr. Toro made a series of conclusions about claimant's functional limitations, the majority of which are inconsistent with the ALJ's RFC finding. Dr. Toro concluded claimant could only sit and stand each for less than two hours per workday and would need to walk for five to ten minutes, every thirty minutes.[5] (Tr. 207.) Claimant's other treating physician, Dr. Llavona, also found claimant capable of sitting and either standing or walking for less than two hours in a workday. (Tr. 393.) He further concluded claimant would need to walk every ninety minutes for two minutes at a time and to be able to shift positions at will between sitting, standing, and walking. (Id.) Although Dr. Llavona reached a different diagnostic conclusion (cervical strain, lumbar strain, bilateral shoulder tendinitis, bilateral ankle strain, and scoliosis), his limitations were based on the same subjective complaints of moderate to severe pain. (Tr. 391.)

Dr. Toro next concluded that claimant would only be able to lift/carry ten pounds rarely and could occasionally lift/carry less than that. (Tr. 208.) Dr. Llavona concluded claimant could occasionally lift/carry ten pounds. (Tr. 394.) Dr. Toro additionally found that claimant would need to take three minute breaks every thirty minutes in order to lie down or sit quietly. (Tr. 207.) Dr. Llavona found claimant would need daily, unscheduled breaks for an hour. (Tr. 392–93.) Both Dr. Toro and Dr. Llavona concluded claimant's conditions would require her to be absent from work more than four days a month. (Tr. 208, 395.) When Dr. Toro's limitations with respect to lifting or carrying, unplanned breaks, and the need to walk around were incorporated into hypothetical, the VE concluded claimant would not be able to perform any job in either the national or local economy.

In reaching her finding regarding claimant's limitations, the ALJ granted great weight to the findings of consultant internist Dr. Torres, who completed a physical evaluation of claimant on April

---

[5] The workday is defined as lasting eight hours.

2, 2011.[6] (Tr. 26, 396.) The ALJ also granted great weight to the physical residual functional capacity assessment completed by Dr. Ramírez on April 18, 2011. (Tr. 27, 406.) On the other hand, the ALJ granted no weight to the opinion of treating rheumatologist Dr. Toro. (Tr. 26.) Treating sources are generally afforded greater weight because they are likely to have the most "detailed, longitudinal picture" of a claimant's health. Berríos Vélez v. Barnhart, 402 F.Supp.2d 386, 391 (D.P.R. 2005) (citing 20 C.F.R. § 404.1527(d)(2)). To be given such weight, however, the treating physician's opinion must be well-supported by medically acceptable techniques and not inconsistent with other substantial evidence in the record. Polanco-Quiñones v. Astrue, 477 F. App'x, 745, 746 (1st Cir. 2012) (quoting 20 C.F.R. § 404.1527(d)(2)). In support of the weight afforded Dr. Torres, the ALJ highlighted that the report was submitted into the record only a few days before the hearing, was undated, "contains limitations that are quire conclusory and unsupported with little no [sic] explanation," and "contrast[s] sharply with other evidence of record." (Id.)

    The former two reasons do not go towards the substance of Dr. Toro's opinion. The fact that the report was submitted shortly before the hearing is not, in itself, reason to discount it. Additionally, although the report is undated, there is only a window of approximately a month in which it could have been authored.[7] The report makes reference to claimant's most recent visit on September 5, 2012, and the report was submitted into the record on October 9, 2012. (Tr. 26, 205.)

    The latter two considerations, if correct, are both accepted reasons for discounting the opinion of a treating source. Critically, these must be analyzed in the light of the peculiarities expected in fibromyalgia cases. As the First Circuit has noted, a "lack of objective findings to substantiate [a claimant's condition] . . . is what can be expected in fibromyalgia cases." Johnson, 597 F.3d at 412–13. Rather, fibromyalgia is diagnosed using one of two methods recognized by the American College

---

[6] The ALJ granted no weight to Dr. Torres's finding that claimant is unable to do regular work, which she concluded was a typographical error. (Tr. 26.)

[7] The report is also unsigned, but neither the ALJ nor defendant appears to raise a question as to its authenticity. The absence of both the date and signature appear to be the result of an entirely missing page. The document is bates stamped to contain six pages, but only five are part of the record.

of Rheumatology ("ACR"). Social Security Regulation ("SSR") 12–2p, 2012 WL 3104869, at *2–3. Under the first set of criteria the patient must have a history of widespread pain in all quadrants that persists for at least three months, at least eleven out of eighteen tender points upon physical examination, and the exclusion of other potential causes. Id. The second set of criteria requires a patient to have the same history of widespread pain and exclusion of other causes, but rather than a physical examination, the practitioner may rely on repeated manifestations of six or more symptoms, such as fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder or irritable bowel syndrome. Id. Therefore, a finding of fibromyalgia and the diagnosing doctor's opinion cannot be disregarded solely because there is a lack of objective findings. Downs, 2014 WL 220697, at *5.

Dr. Toro supported his findings with the elements of the ACR's symptom-based analysis. Dr. Toro noted "more than two years [of] moderately severe widespread pain" on both sides of the body, extremities, torso, and spine. (Tr. 205.) Dr. Toro also excluded other potential causes of pain, as indicated in his report by the tests he performed that came back negative. (Tr. 206.) Finally, Dr. Toro noted claimant experienced at least seven of the identified symptoms—depression, anxiety, non-restorative sleep, chronic fatigue, frequent headaches, and multiple tender points. (Tr. 205–06.) The majority of these symptoms are consistent with claimant's treatment record. Claimant was diagnosed with depression by treating physician Dr. Llavona (tr. 391), treating psychiatrist Dr. Alberto Rodríguez Robles ("Dr. Rodríguez") (tr. 129)[8] and consulting psychiatrists Dr. Efren E. Mangual Cordero ("Dr. Mangual") (tr. 109) and Dr. Wanda Machado ("Dr. Machado") (tr. 426).[9] Claimant's complaints of anxiety are reflected in the treatment notes of the SIF (tr. 127) and the evaluations of Dr. Mangual (tr. 105) and consultant internist Dr. Torres (tr. 397). Claimant's inability

---

[8] Dr. Rodríguez listed the diagnosis as 296.23, which under the DSM IV corresponds to Major Depressive Disorder: Single Episode, Severe Without Psychotic Features. See Ramos-Rosado v. Comm'r of Soc. Sec., No. CIV. 11-2048 CVR, 2013 WL 135219, at *7 (D.P.R. Jan. 9, 2013); Melendez-Ojeda v. Comm'r of Soc. Sec., No. CIV. 11-1485 CVR, 2012 WL 5199609, at *7 (D.P.R. Oct. 22, 2012); Ocasio-Alvarado v. Astrue, No. CIV. 10-1436 BJM, 2011 WL 2441381, at *3 (D.P.R. June 10, 2011).
[9] Dr. Machado lists the diagnosis as "MDD Moderate." (Tr. 426.) The Commissioner identifies this as major depressive disorder. ECF No. 18, at 5.

to sleep well was noted by the SIF (tr. 133), treating psychiatrist Dr. Rodríguez (tr. 128, 146), and Dr. Torres (tr. 397). Dr. Rodríguez indicated claimant was "easily fatigued." (Tr. 128, 146). Lastly, claimant's first exam with the SIF notes she experiences severe headaches. (Tr. 170.) The only symptom not found elsewhere in the record is the "multiple tender points."

  Dr. Toro also found that claimant experienced pain bilaterally in her lumbosacral spine, cervical spine, thoracic spine, chest, shoulder, arms, hands/fingers, hips, legs, and knees/ankles/feet. (Tr. 205.) The ALJ addressed claimant's subjective symptomology, including "shoulder, ankle and low back pain" and "a great deal of pain from her neck to her waist that also radiates to her arm and legs." (Tr. 25.) The ALJ then concludes, "[c]laimant's alleged symptoms and functional limitations are not consistent with the medical evidence." (Id.) As Johnson noted, the primary symptom of fibromyalgia is pain. 597 F.3d at 414. In disregarding these symptoms, the ALJ points to portions of the record that show claimant has a good range of neck motion, ability to bend, positive peripheral pulses, and deep tendon reflexes. (Tr. 25.) This is not inconsistent with claimant's fibromyalgia symptoms, however, because fibromyalgia patients have normal musculoskeletal and neurological examinations. Johnson, 597 F.3d at 410 (citing Harrison's Principles of Internal Medicine, at 2056 (16th ed. 2005)). Thus, these findings cannot be used to discredit Dr. Toro's opinion.

  The ALJ also highlights that "despite a single instance in which she complained of level 8 to 7 pain, her complaints of pain to [SIF] have been mostly consistent with moderate (level 4 to 6 pain) to mild pain (level 1 to 3)." (Tr. 25.) Claimant was treated at the State Insurance Fund from April 27, 2009 until at least June 27, 2012 (Tr. 127, 176.) Just as with the singular instance of severe pain, claimant only described her pain as mild on a single instance. (Tr. 170.) In the same document where claimant selected "mild" as the best reflection of her pain, however, the pain was also twice described as severe. (Id.) The majority of treatment notes at the SIF list claimant's pain level as moderate. (Tr. 141, 142, 145, 155.) Dr. Llavona, who treated claimant from April 20, 2005 to January 18, 2011, described claimant's pain as "moderate severe." (Tr. 391.) After seeing claimant every two to three

months from September 2011 to September 2012, Dr. Toro also described the character of claimant's pain as "moderately severe." (Tr. 205.) Here, as in Johnson, the ALJ "points to no instances in which any of claimant's physicians ever discredited her complaints of such pain." 597 F.3d at 414. Dr. Torres, the consulting internist on whose opinion the ALJ heavily relies, never makes an expression as to the severity of claimant's alleged pain.

Further, the records from claimant's treating sources reveal that claimant had previously experienced pain in many of the areas identified by Dr. Toro. Claimant's treatment notes from the SIF, spanning 2009 until mid-2012, reveal complaints of bilateral pain in her upper, mid, and lower back, neck, shoulders, arms, and ankles. (Tr. 142, 145, 155, 170, 179.) According to Dr. Llavona, claimant was experiencing moderate severe pain, every other day. (Tr. 391.) He diagnosed claimant with cervical strain, lumbar strain, bilateral shoulder tendinitis, and bilateral ankle strain. (Tr. 391.). (Tr. 391.) Dr. Torres noted cervico dorsal discomfort, but found no evidence of limbs or joint pain, swelling, heat or tenderness. (Tr. 399.) This single examination in April of 2011 is the only record to report such an absence of pain.

Thus, it is not apparent that the evidence on the record sharply contrasts with the findings of Dr. Toro, a specialist in the relevant field, rheumatology, who saw claimant at least four times over the span of a year. The clinical findings of Dr. Torres, who examined claimant on a single occasion, is the only evidence in tension with the symptomology reported by Dr. Toro. This does not amount to substantial evidence to disregard the opinion of a treating physician. It is therefore necessary to remand this case to the ALJ for further findings regarding the weight granted Dr. Toro.[10] This is a

---

[10] Claimant also argues remand is warranted for further findings at step three. Defendant here erroneously stated that claimant is not challenging the ALJ's findings at this step. ECF No. 13. Despite recognizing fibromyalgia as a severe impairment, the ALJ does not address whether it alone or in combination with claimant's other conditions meets or medically equals one of the listed impairments in 20 C.F.R. Par 404, Subpart P, Appendix 1. The First Circuit has yet to address when failure to make specific reference to a recognized impairment constitutes reversible error. Canvasing outside Circuit and District courts reveals no consensus in how this should be evaluated. See, e.g, Medina-Augusto v. Comm'r of Soc. Sec., No. CV 14-1431 (BJM), 2016 WL 782013, at *8 (D.P.R. Feb. 29, 2016) (collecting cases) ("Courts differ in the extent to which at step three the ALJ must discuss whether the claimant's severe conditions medically equaled a listing, and whether failure to do so constitutes harmless error in view of the ALJ's discussion of the evidence at subsequent steps."). For the purpose of remand the court makes no express finding in this regard.

somewhat unusual situation in which a new diagnosis arose shortly before the hearing. Although this short lapse of time alone is not reason to discredit the opinion of Dr. Toro, it does mean that none of the State Agency experts were operating with the benefit of this diagnosis. Dr. Torres and Dr. Ramírez were assessing claimant on the basis of various musculoskeletal concerns. Therefore, on remand, should the ALJ feel it necessary to further develop the record as to the functional limitations that result from this diagnosis, she is entitled to do so in the exercise of her sound discretion. No expression is made regarding the weight that should ultimately be afforded to the opinions of Dr. Toro. Further, this remand does not dictate any outcome with regard to the final finding of disability.

In order to clarify the issues on remand, the court shall address claimant's other arguments.

B. Remaining Arguments

a. *Weight Given to Dr. Llavona's Report*

Claimant also argues that the ALJ did not provide good reasons for giving no weight to the opinion of treating physician Dr. Llavona. As addressed above, treating sources are generally given greater weight because those are likely the "most able to provide a detailed, longitudinal picture of the claimant's medical impairments." Berríos Vélez, 402 F.Supp.2d at 391 (quoting 20 C.F.R. § 404.1527(d)(2)). Lesser weight may be given, however, if the treating source's opinion is not well-supported by medically acceptable diagnostic techniques or is inconsistent with other substantial evidence in the record. Polanco-Quiñones, 477 F. App'x, at 746 (quoting 20 C.F.R. § 404.1527(d)(2)). If the ALJ finds that the opinion of the treating physician does not require controlling weight, the ALJ must state "good reasons" for this finding. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ here gave no weight to the findings of Dr. Llavona because he provided no treatment notes, he provided no supporting documentation or objective tests, it is unsupported by the

evidence of record, and although it was signed, it does not include an address or telephone number that would allow the Commissioner to request further detail. (Tr. 26.)

Plaintiff argues that this determination was erroneous under Soto–Cedeño v. Astrue, 380 F. App'x 1 (1st Cir.2010).[11] In Soto–Cedeño, the ALJ rejected the opinion of the treating psychiatrist "in part because no supporting treatment notes were attached to his ... report and RFC assessment." Id. at 2. The First Circuit concluded that "the absence of treatment notes does not justify the rejection of [the treating psychiatrist]'s opinion" because the report which was submitted "explained the basis for his opinion." Id. Specifically, the report "described his observations of [plaintiff] and the results of specific memory tests he had administered to her at her most recent appointment...." Id. Thus, the court held that "the absence of treatment notes alone did not show that [the treating psychiatrist]'s opinion was not 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Therefore, it is necessary to examine the other reasons provided in justification of the weight given Dr. Llavona's report.

Dr. Llavona treated claimant from April 20, 2005 to January 18, 2011. (Tr. 391.) The ALJ states that, given the absence of treatment notes, without testimony of claimant she was unable to question "the type, frequency and quality of the treatment (if any) received from this source." In Johnson v. Astrue, the First Circuit faced a similar situation and highlighted that the ALJ there "offered no explanation for, or citation in support of, her belief that Dr. Ali's treatment relationship with claimant had been too abbreviated to enable him to offer an informed opinion about claimant's physical capabilities." 597 F.3d at 411 (emphasis omitted). Similarly the ALJ here provides no basis to question to nature of treatment claimant received from Dr. Llavona. Further, Dr. Llavona does list patient's underlying symptoms that supported her findings, as well as treatments employed. (Tr. 391.) Additionally, the ALJ does not elaborate how Dr. Llavona's findings differ from other evidence of the record, but merely states, "evidence of the record does not support the limitations he reported."

---

[11] The defendant did not address this argument in its memorandum of law.

(Tr. 26.) Remand is already warranted for further elaboration on the weight given to Dr. Toro's report. Therefore, on remand, further findings shall be made regarding the lack of support in Dr. Llavona's report or its inconsistencies with the overall record. The court makes no expression, however, regarding whether this basis would be sufficient standing *alone* to warrant remand. Again, no expression is made regarding the weight that should ultimately be afforded to the opinions of Dr. Llavona.

      b. *Mental Health*

Plaintiff next contends that the ALJ did not appropriately consider claimant's Major Depressive Disorder and related symptoms. This diagnosis is reflected in the records of treating physician Dr. Llavona (tr. 391) and consulting psychiatrists Dr. Rodríguez (Tr. 129.), Dr. Mangual (tr. 109), and Dr. Machado (tr. 426). In the RFC finding the ALJ concluded this diagnosis left claimant capable of "performing unskilled work that is simple and repetitive that requires occasional contact with coworkers and the public." (Tr. 23.)

"The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). While the Commissioner's fact findings are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.1999) (per curiam). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz, 955 F.2d at 769. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir.1987) (per curiam).

Here, substantial evidence supports the finding of the ALJ with respect to claimant's mental health limitations. Contrary to claimant's argument, the record does not show that the ALJ erred in considering claimant's memory, attention, and concentration. The ALJ found claimant was mildly limited with respect to concentration and persistence or pace. (Tr. 22.) The only treating source to remark on the matter is an evaluation from the SIF that finds claimant's memory adequate. (Tr. 21, 188.) Dr. Rodríguez concluded her attention and concentration were diminished, but her recent and past memory were adequate. (Tr. 20, 128.) Dr. Mangual concluded that her short-term and recent memory were poor and that she had partial attention and concentration. (Tr. 20, 108.) Dr. Machado did not examine claimant, but completed a psychiatric review based on her records. She concluded claimant was moderately limited in her ability to maintain attention and concentration for extended periods, but retained "sufficient concentration to endure the course of a normal workday/workweek with the benefit of customary tolerances." (Tr. 437, 439.) Ultimately, "the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the ALJ], not for … the courts." Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

The plaintiff also contends that the ALJ erred in the weight given to Dr. Mangual. Consulting psychiatrist Dr. Mangual noted that claimant showed "moderate psychomotor retardation." (Tr. 107.) Her thought process was logical, coherent, and relevant, but he indicated that she was "not reliable to interrogation." (Tr. 107–08.) Claimant alleges the ALJ failed to appropriately consider that Dr. Mangual assessed a G.A.F. of forty. ECF No. 16, at 22. No elaboration was provided regarding either the meaning of this metric or the functional limitations arising therefrom. The ALJ granted great weight to the clinical evaluation of Dr. Mangual, but no weight to the findings that claimant was unable to assume total responsibility for herself and her finances and that her prognosis was reserved.[12] (Tr. 26, 109.) The ALJ concluded these assessments were inconsistent with both Dr. Mangual's own conservative findings and the notes from the SIF. Claimant's treatment notes at

---

[12] Plaintiff erroneously states that the ALJ gave "no weight" to the clinical signs of Dr. Mangual. ECF No. 16, at 22.

the SIF also indicate a history of depressed feelings, but show claimant was beginning to feel better with medication. (Tr. 121, 127, 181, 187, 191.) As Dr. Mangual was not a treating source, but rather a consultant, the ALJ was only required to "explain in the decision the weight given." 20 C.F.R. § 404.1527(f)(2)(ii). The ALJ has met this burden. Therefore, on remand, the ALJ need not address claimant's mental health unless it is necessary as a comorbidity of fibromyalgia.

    c. *Obesity*

Plaintiff also argues that the ALJ did not indicate how or whether claimant's obesity influenced the restrictions. The ALJ specifically states that "the undersigned has considered the impact obesity has on limitation of functioning including the claimant's ability to perform routine movement and necessary physical activity within the work environment." (Tr. 26.) Although the ALJ did not find any specific limitations resulting from the obesity, she did "conclude that the claimant's obesity does not result in limitation in excess" of the RFC finding. (Id.) Further, plaintiff does not point to any evidence on the record that indicates the functional limitations that arise from plaintiff's obesity either alone or in conjunction with her other impairment. The ALJ's analysis is enough to satisfy the ALJ's burden of considering a claimant's obesity pursuant to SSR 02-1p, 2002 WL 34686281. See, e.g., Sleight v. Commissioner of Social Sec., 896 F. Supp. 2d 622 (E.D. Mich. 2012) (holding that the ALJ's analysis would be sufficient if it "... simply advise[d] the claimant and the Court along the following lines: 'Because the claimant has not identified specifically how her obesity limits her functionally, and because no 'assumptions' about obesity may be drawn under S.S.R. 02-1p, the undersigned concludes that the claimant's obesity does not affect the step three, four, or five analysis.'"); Hagigeorges v. Astrue, No. CIV.A. 11-11842-DPW, 2012 WL 5334771, at *13 (D. Mass. Oct. 25, 2012) ("the functional limitations such obesity and other impairments cause must be shown in the record"). In the present case, the ALJ goes at least as far as Social Security Regulation 02-1p requires.

### III. CONCLUSION

Based on the foregoing analysis, the Commissioner's decision is **VACATED IN PART** and **AFFIRMED IN PART**. The court concludes that the decision of the Commissioner regarding the weight to be granted to Dr. Toro's opinion was not based on substantial evidence. Therefore, the Commissioner's decision is hereby **VACATED IN PART** and the case **REMANDED** for further proceedings consistent with this opinion regarding fibromyalgia, the opinion of Dr. Toro, and the opinion of Dr. Llavona. With respect to claimant's mental health and obesity, the Commissioner's decision is hereby **AFFIRMED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2016.

s/Marcos E. López
U.S. Magistrate Judge
